IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN S. SCHWARTZ, | ) |
| Plaintiff, | ) |
| | ) 10 C 2141 |
| v. | ) |
| ALAN OSOFSKY, an individual; GREG GREVES, individually and as agent for FC STONE GROUP, INC. *d/b/a* INTL FCSTONE; and FC STONE GROUP, INC. *d/b/a* INTL FCSTONE, an Iowa corporation, | ) |
| | ) Hon. Charles R. Norgle |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Plaintiff Martin S. Schwartz's ("Schwartz") motion to vacate dismissal for want of prosecution pursuant to Federal Rule of Civil Procedure 60(b). For the following reasons, the motion is denied.

**I. BACKGROUND**

Schwartz filed the initial complaint in this action on April 7, 2010, against Alan Osofsky ("Osofsky"), Greg Greves ("Greves"), and Jeff Soman ("Soman"), alleging violations under the antifraud provisions of the Commodity Exchange Act. On April 26, 2010, Schwartz sought leave to file a first amended complaint against Osofsky alone, thereby dismissing Greves and Soman as defendants. The Court granted the motion for leave and the case proceeded against Osofsky.

On March 31, 2011, Schwartz sought leave to file a second amended complaint, in which he added FCStone Group, Inc. ("FCStone") as a defendant and reasserted his

1

claims against Greves and Soman. The Court granted the motion and Schwartz filed the second amended complaint on April 8, 2011.

On June 13, 2011, Greves, Soman, and FCStone (the "FCStone Defendants") moved to dismiss the second amended complaint (Osofsky later joined the motion at a September 16, 2011 hearing). On July 18, the date Schwartz's response was due, Schwartz's attorney, Richard Zachary ("Zachary"), moved for an extension until August 8, claiming that he "has been faced with an unprecedented number of commitments in his practice, which have unfortunately coincided with the losses of a full-time associate and part-time contract attorney from his office." Pl.'s Mot. for Extension of Filing Deadline for Resp. to Mot. to Dismiss Second Am. Compl. to Aug. 8, 2011, at 1-2. The Court granted the motion and set the new response deadline for August 26. The Court also ordered the parties to file a Federal Rule of Civil Procedure Form 52 on or before August 31.

On August 30, Defendants filed a Joint Report of the Defendants' Rule 26(f) Planning Meeting. The Joint Report noted that Zachary "did not participate in the parties' scheduled Rule 26(f) conference, nor did he respond to e-mail or voice mail from FCStone Defendants' counsel seeking an explanation for his absence." Joint Report of the Defs.' Rule 26(f) Planning Meeting n.1. Zachary never filed a Form 52 with the Court.

Also on August 30, four days after his response brief was due, Zachary filed a declaration requesting that the Court again extend the deadline and allow him to file the response "on today's date, August 30, 2011." Pl.'s Decl. Regarding Status of Resp. to Dismiss & Mot. for Extension of Filing Deadline to No Later Than Aug. 30, 2011, ¶ 12.

This time, Zachary cited a five-day electrical power outage at his law office and home as the reason for his failure to respond. The Court granted the motion on August 31 and, anticipating the response to be filed instanter, set a reply deadline of September 16.

On September 13, after Zachary still had not filed a response, the FCStone Defendants filed a motion to enforce the August 31, 2011 Order. The motion to enforce provides a detailed description of Zachary's history of delay and inaction, including his "repeated failure to participate in this action and prosecute the claims against the FCStone Defendants – not only the failure to respond to the Motion to Dismiss, but the failure to participate in a Rule 26(f) conference or file a Form 52 with the Court." Mot. to Enforce the Aug. 31, 2011 Order 4.

On September 20, the Court dismissed all claims against Soman with prejudice, but denied the remainder of the motion to dismiss. The Court noted that "its briefing schedule repeatedly extended the deadline for Plaintiff to file a response to the Motion" and that a response was never filed. Minute Order, Sept. 20, 2011 [Doc. # 57]. Also on September 20, the Court issued an Order setting pretrial deadlines and stating that "[t]his lawsuit, filed in early 2010, must proceed apace to a resolution." Minute Order, Sept. 20, 2011 [Doc. # 58].

On September 29, the FCStone Defendants issued interrogatories and document requests to Schwartz, with responses due by October 31, and notified Zachary that the parties were to exchange initial disclosures on or around October 10. The FCStone Defendants served their initial disclosures on October 11, but did not receive anything from Zachary.

Also on October 11, counsel for the FCStone Defendants notified Zachary of their intention to notice Schwartz's deposition during the week of November 14. Zachary did not object to the date and, on October 20, he was served with a notice for Schwartz's deposition, to take place on November 17. FCStone Defs.' Mot. to Dismiss Ex. D.

On October 21, still without Schwartz's initial disclosures, counsel for the FCStone Defendants wrote a letter to Zachary detailing his numerous discovery violations and warning that they would "seek relief from the Court" if he did not take action in this case. Id. Ex. E. In a second letter to Zachary, dated November 8, the FCStone Defendants, still without Zachary's initial disclosures or discovery responses, stated that they were postponing Schwartz's deposition pending receipt of discovery. The letter further stated that they intended to obtain "relief from the Court due to Plaintiff's discovery abuses." Id. Ex. F.

On November 15, having received no response from Zachary, the FCStone Defendants filed a motion to dismiss for want of prosecution, outlining in detail Schwartz's failures to prosecute this action. Osofsky filed a similar motion to compel and for sanctions. Both motions were noticed for a 9:30 a.m. hearing on November 18.

When the case was called on November 18, neither Schwartz nor Zachary appeared. The Court, familiar with the above record, including the exhibits attached to the FCStone Defendants' motion, dismissed the case for want of prosecution as to all Defendants. See Opp. to Pl.'s Mot. to Vacate Ex. 1.

Zachary arrived approximately eighteen minutes after the hearing concluded. The Court explained that an Order was entered in his absence and suggested that he get in touch with the attorneys who were here on time, and who had since departed. The Court

stated that, "[i]f you are aggrieved by the order, take appropriate steps to try to vacate the order." Id.

Both Schwartz and his new counsel, Anthony DiVincenzo ("DiVincenzo"), have submitted affidavits setting forth what happened next. Schwartz states that he attempted to contact Zachary on numerous occasions after November 19, to no avail. Due to this lack of communication, Schwartz contacted DiVincenzo on December 9, and the two "spoke at length" on December 10. Pl.'s Mot. to Vacate Dismissal Ex. A ¶ 13. On December 12, DiVincenzo, after examining the case docket, informed Schwartz that Defendants had filed motions to compel and for sanctions and that the case had been dismissed for want of prosecution on November 18.

Schwartz again tried to contact Zachary. On December 15, Zachary called Schwartz and told him that he would file a motion to vacate the dismissal by December 21. On December 26, having filed no such motion, Zachary forwarded Schwartz a copy of a physician's letter indicating that he suffered from a medical condition that prevented him from "concentrating visually." Id. ¶ 19.

Schwartz states that he retained DiVincenzo on February 18, 2012, and DiVincenzo filed the instant Rule 60(b) motion on March 13, 2012. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Review

Rule 60(b)(1) provides for discretionary relief from a final judgment or order on the basis of "mistake, inadvertence, surprise, or excusable neglect." It is well established that Rule 60(b) relief is "an extraordinary remedy and is granted only in exceptional

5

circumstances." Eskridge v. Cook Cnty., 577 F.3d 806, 809 (7th Cir. 2009) (quotation omitted). "Relief under Rule 60(b) from a dismissal for lack of prosecution is thus warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." Dickerson v. Bd. of Educ. of Ford Heights, Ill., 32 F.3d 1114, 1116 (7th Cir. 1994) (quotation omitted). The determination of what amounts to excusable neglect is "at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993) (citations omitted).

**B. Plaintiff's Motion to Vacate**

Schwartz seeks to vacate the dismissal for want of prosecution on the basis that Zachary's conduct constitutes excusable neglect under Rule 60(b)(1). In response, Defendants argue that Zachary's conduct is not excusable and, in any event, that Schwartz's motion is untimely. Defendants are correct on both grounds.

*1. Excusable Neglect*

"Although attorney carelessness can constitute 'excusable neglect' under Rule 60(b)(1), attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." Easley v. Kirmsee, 382 F.3d 693, 698 (7th Cir. 2004) (citing Robb v. Norfolk & W. Ry. Co., 122 F.3d 354, 360 (7th Cir. 1997) (internal citations omitted)); see also Harrington v. City of Chi., 433 F.3d 542 (7th Cir. 2006). "A lawyer who inexcusably neglects his client's obligations does not present exceptional circumstances." Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc., 570 F.3d 845, 848 (7th Cir. 2009) (internal citation omitted).

6

Zachary's conduct cannot be classified as excusable neglect. After filing the second amended complaint on April 8, 2011, Zachary took no substantive action to prosecute this case. Indeed, the only documents that Zachary filed after April 8 were two requests seeking more time to respond to Defendants' motions to dismiss, the first citing a heavy workload and the second an electrical power outage. There is no dispute that Zachary failed to: (1) participate in the Rule 26(f) conference; (2) participate or cooperate in the preparation and filing of the related Joint Report; (3) respond to Defendants' motions to dismiss; (4) file initial disclosures; (5) respond to Defendants' document requests and interrogatories; (6) issue discovery requests of his own; and (7) appear in Court. Indeed, Schwartz himself admits that Zachary "missed court appearances, failed to file discovery, failed to answer discovery, and failed to file any pleadings." Pl.'s Reply in Supp. of Pl.'s Mot. to Vacate 2. This is more than "attorney carelessness." Zachary's conduct "in failing to prosecute [his] case in a lawyer-like fashion approaches a 'clear record of delay or contumacious conduct' that would justify such a dismissal." Easley, 382 F.3d at 698 (quoting Williams v. Chi. Bd. of Educ., 155 F.3d 853, 857 (7th Cir. 1998)); see also Aura Lamp & Lighting, Inc. v. Int'l Trading Corp., 325 F.3d 903, 909 (7th Cir. 2003) (upholding dismissal for want of prosecution when plaintiff failed to sign pleadings filed with the court, repeatedly missed court-imposed deadlines for discovery and motion practice, ignored agreed extensions, and failed to amend its complaint after the court ordered it to do so).

Schwartz's argument that Zachary's eye illness constitutes excusable neglect is also without merit. While an attorney's severe illness may lead to a proper finding of excusable neglect, a relatively brief illness that is not incapacitating will not be sufficient

to justify a failure to prosecute a case. See Dickerson, 32 F.3d at 1118. On December 26, 2011, Zachary emailed Schwartz and others to explain that an eye illness "has prevented me from concentrating visually for numerous weeks." Pl.'s Mot. to Vacate Dismissal Ex. B. Relying exclusively on a physician's note, Schwartz maintains that Zachary's "condition began ten days before November 24, 2011 and worsened over time." Pl.'s Reply in Supp. of Pl.'s Mot. to Vacate 3. This admittedly brief illness is not enough to establish excusable neglect. Even if the illness was incapacitating—and there is no evidence that it was—it does not explain Zachary's near nine months of inaction in this matter. Schwartz has not established that Zachary's eye condition warrants Rule 60(b) relief.

To the extent Schwartz argues that the Court improperly accepted defense counsel's representation that Zachary had been sufficiently warned of the potential for dismissal (and it is not clear that he does), the argument is without merit. While a plaintiff "should ordinarily be forewarned that dismissal is a potential consequence of flouting deadlines and orders . . . [the] warnings need not come from the court itself; it suffices if a defendant advises the plaintiff that continued intransigence will warrant dismissal." Curtis-Joseph v. Richardson, 417 F. App'x 570, 572 (7th Cir. 2011) (internal citation omitted); see also Fischer v. Cingular Wireless, LLC, 446 F.3d 663, 665-66 (7th Cir. 2006) (emphasizing that defendant's motion asking the court to dismiss the case if pro se plaintiff continued to ignore discovery deadlines gave plaintiff adequate warning).

Here, the FCStone Defendants filed both a motion to enforce the Court's August 31, 2011 Order and to grant their unopposed motion to dismiss, as well as a motion to dismiss for want of prosecution. The motion to dismiss for want of prosecution followed

multiple letters from the FCStone Defendants to Zachary that included specific threats to seek relief from the Court if Zachary's failures to participate in the case persisted. And on September 20, 2011, the Court itself made clear that it was concerned about Zachary's inaction, noting his failures to respond in its Opinion and warning in a separate Order that "the case must proceed apace." On this record, Zachary received sufficient warning of the potential for dismissal.

Finally, Schwartz argues that the dismissal order should be vacated because it was Zachary's actions, not his, that justified the dismissal. See Pl.'s Reply in Supp. of Pl.'s Mot. to Vacate 2. This argument has long been rejected. First, it is not entirely clear that the blame lies exclusively with Zachary. See Kagan, 795 F.2d at 611 ("We initially note that [plaintiff] contributed to his own demise in failing to do anything about checking with his attorney as to the progress or lack of progress of his case or personally contacting the district court or insisting that his counsel promptly contact the district court once he learned of the dismissal."). And even if Schwartz is completely blameless, the result would not change. It is well established that "dismissal for failure to prosecute is an appropriate sanction for lawyers' delays and defaults even if the plaintiff is blameless; the sins of the agent can be visited upon the principal." Ball v. City of Chi., 2 F.3d 752, 756 (7th Cir. 1993) (citing Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962)); see also Martinez v. City of Chi., 499 F.3d 721, 728 (7th Cir. 2007) ("It is unfortunate for [plaintiff] that her attorney's neglect resulted in the dismissal of what may have been a meritorious action. The result here may seem harsh, but when a lawyer's inattentiveness becomes as serious as it was here, it imposes costs on everyone: the client, the opponent, and the court system. [Plaintiff's attorney] was [plaintiff's] agent, and

9

[plaintiff] is thus bound by his actions."). The proper remedy, if Schwartz is to have one at all, is against Zachary. See id.; see also Bakery Mach. & Fabrication, Inc., 570 F.3d at 848 ("[Plaintiff's] beef is against [its attorney], not the court's ruling on the case. Deception of a client becomes the liability of the client's attorney and not the client's opponent.").

### 2. *Timeliness*

Even if Schwartz could demonstrate excusable neglect, he has failed to establish that he moved within a reasonable amount of time to vacate the dismissal. Rule 60(b)(1) motions "shall be made within a reasonable time," but "not more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The one-year cap is an "extreme [outer] limit . . . even a motion filed within a year 'will be rejected as untimely if not made within a reasonable time.'" Berwick Grain Co. v. Ill. Dep't of Agric., 189 F.3d 556, 560 (7th Cir. 1999) (quoting Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986)). Indeed, the Seventh Circuit has "found a delay of less than five weeks unacceptable, particularly in cases where a pro se litigant later demonstrates the capacity to hire a lawyer." Casio Computer Co., Ltd. v. Noren, 35 F. App'x 247, 250 (7th Cir. 2002). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice if any to other parties." Kagan, 795 F.2d at 610 (quotation omitted).

Schwartz did not file the motion to vacate until March 13, 2012, nearly four months after the case was dismissed and three months after he claims to have learned of the

10

dismissal. Schwartz attempts to blame the delay on Zachary, who did not answer his calls or turn over his case file, and who led him to believe that a motion to vacate "would be filed by no later than December 21, 2011." Pl.'s Mot. to Vacate Ex. 1 ¶ 17. Addressing a similar argument in Kagan, the Seventh Circuit explained:

> The only excuse offered by the appellant for his delay in contacting the court was the difficulty he experienced in retaining new counsel to handle the case and the purported lack of cooperation of [old counsel] in turning over the case file and in advising new counsel of the status of the case. <u>While these allegations might explain a brief delay in the preparation and filing of a motion to reinstate along with a supporting memorandum . . . they do not justify the total silence of Kagan and his [new] attorney . . . for more than 45 days.</u> . . . If [old counsel's] lack of cooperation with [new] attorneys . . . was causing delay in the transfer of the case . . . Kagan or his [new] attorneys . . . certainly should have advised the trial judge that [old counsel] refused to hand over the case file. At the very least, Kagan or one of his counsel should have informed the court that they intended to ask leave of the Court to reinstate the case and were in the process of preparing the proper motion papers to file with the court.

Kagan, 795 F.2d at 611 (emphasis added).

Similarly, Schwartz's allegations do not justify his three month delay. Schwartz "spoke at length" with DiVincenzo on December 10, 2011, and learned that the case was dismissed two days thereafter. By this time, if not earlier, Schwartz was fully apprised of Zachary's near nine months of idleness. When Zachary failed to file a motion to vacate on December 21, Schwartz took no immediate action; nor did Schwartz take action after December 26, the date Zachary informed him that he was suffering from an eye illness that prevented him from concentrating visually. At this point, Schwartz knew everything he needed to know in order to file the motion to vacate or, consistent with Kagan, at least, inform the Court that he intended to do so and was in the process of preparing the papers. Instead, he waited nearly three additional months before filing the motion. Schwartz fails to provide any persuasive reason for this delay. On these facts, this is not a "reasonable

time" under Rule 60(b)(1).  See, e.g., Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994); Kagan, 795 F.2d at 610-11; Casio Computer Co., Ltd., 35 F. App'x at 250-51.

### III. CONCLUSION

For the foregoing reasons, Schwartz's motion to vacate is denied.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: June 12, 2012